Michael A. Strauss (SBN 246718)
mike@strausslawyers.com
Aris E. Karakalos (SBN 240802)
aris@strausslawyers.com
**STRAUSS & STRAUSS, APC**
121 North Fir Street, Suite F
Ventura, California 93001
Telephone: (805) 641-6600
Facsimile: (805) 641-6607

*Attorneys for Plaintiff Robert North and the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT NORTH, an individual, for himself and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUPERIOR HAULING AND FAST TRANSIT, INC. (dba REDBIRD CARRIERS), a Missouri corporation; INTERMODAL DRAYAGE SERVICES, INC., a Missouri corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No: 5:18-cv-02564-JGB-KK<br><br>*Assigned to the Hon. Jesus G. Bernal*<br><br>**PLAINTIFF'S NOTICE UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 7, 2020<br>Time: 9:00 a.m.<br>Ctrm: 1<br><br>Complaint filed: Oct. 10, 2017<br>Removed on: Dec. 7, 2018 |

**TO ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff, Robert North, on behalf of himself and those similarly situated, moves this Court for an Order: (1) finally approving the Joint Stipulation of Settlement and Release of Class Action; (2) finally certifying the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only; (3) finally appointing Plaintiff as Class representative and Plaintiff's counsel as Class Counsel; (4) finally approving class counsel's request for fees and costs; (5) finally approving the Class representative's request for a service fee; and (6) entering a final judgment and retaining jurisdiction over the Settlement.  A proposed order is filed concurrently.

This motion is set for hearing on December 7, 2020, at 9:00 a.m. in Courtroom 1 in the above entitled courthouse located at 3470 12th Street, Riverside, California 92501. This motion is based upon this notice, the accompanying Memorandum of Points and Authorities filed herewith, the Declaration of Aris E. Karakalos, the Declaration of Michael A. Strauss, the Declaration of Plaintiff Robert North, the Declaration of Carole Thompson of CPT Group, and the Declaration of Emily Quillen, including their attached exhibits, all of which are filed concurrently, the Stipulation with accompanying exhibits, the filings in this case, and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 9, 2020, and multiple times thereafter.

Dated: November 9, 2020                    **STRAUSS & STRAUSS. APC**


                                          By:   /s/_____
                                                Aris E. Karakalos
                                                Attorneys for the Class

# **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................... 1

II.     PROCEDURAL HISTORY ............................................................ 2

III.    THE SETTLEMENT AGREEMENT ........................................... 3

    a.  Financial Terms................................................................................ 3

    b.  Release ............................................................................................. 4

    c.  Notice and Claims Process............................................................. 4

    d.  Administration ................................................................................ 6

IV.     LEGAL STANDARD ................................................................... 6

    a.  Class Action Settlement ................................................................. 6

    b.  Attorneys' Fees .............................................................................. 7

V.      DISCUSSION .............................................................................. 7

    a.  Class Action Fairness Act ("CAFA")............................................ 7

    b.  Rule 23(a) and (b) Requirements................................................... 8

    c.  Rule 23(c)(2) Notice Requirements ............................................... 9

    d.  Fair, Reasonable and Adequate...................................................... 9

        i.      Strength of the Plaintiff's Case ......................................... 10

        ii.     Risk, Expense, Complexity, and Duration of Further Litigation............ 11

        iii.    Risk of Maintaining Class Action Status Through Trial...................... 11

        iv.     Amount Offered in Settlement........................................... 12

        v.      Extent of Discovery Completed, and Stage of the Proceedings............ 12

        vi.     Experience and Views of Counsel ..................................... 13

        vii.    Presence of Governmental Participant ............................... 15

        viii.   Any Opposition by Class Members .................................. 15

    e.  Attorneys' Fees and Costs ........................................................... 15

        i.      Attorneys' Fees ................................................................. 15

        ii.     Costs.................................................................................. 23

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

f.  Service Fee...................................................................... 24

VI.    PAGA NOTICE COMPLIANCE........................................................ 25

VII.    CONCLUSION.................................................................... 26

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*In re Celera Corp. Sec. Litig.*,
No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)............12

*Adoma v. Univ. of Phoenix, Inc.*,
913 F. Supp. 2d 964 (E.D. Cal. 2012) ........................................6, 8

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................16

*Caudle v. Bristow Optical Co., Inc.*,
224 F.3d 1014 (9th Cir. 2000)...........................................16

*Cicero v. DirecTV, Inc.*,
2010 WL 2991486 (C.D. Cal. July 27, 2010)...............................18

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992)........................................... 6

*Deaver v. Compass Bank*,
No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015)..............12

*Doty v. Costco Wholesale Corp.*,
No. 05-3241 (C.D. Cal. May 14, 2007) .....................................21

*Ficalora v. Lockheed Cal. Co.*,
751 F.2d 995 (9th Cir. 1985) ...........................................15

*Fischel v. Equitable Life Assurance Society of the United States*,
307 F.3d 997 (9th Cir. 2002) ...........................................16

*Fischel v. Equitable Life Assurance Society of the United States*,
307 F.3d 1001 (9th Cir. 2002)...........................................19

*Franco v. Ruiz Food Products, Inc.*,
2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ...............................18

//

//

*Galicia Gonzalez v. BMC W., LLC*,

    No. 517CV00390JGBRAOX,

    2018 WL 6318826 (C.D. Cal. Nov. 20, 2018) .................................................25

*Glass v. UBS Fin. Servs., Inc.*,

    No. C-06-4068 MMC, 2007 WL 221862

    (N.D. Cal. Jan. 26, 2007) aff'd, 331 F. App'x 452 (9th Cir. 2009) .....................17

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998)................................................................. 6, 19

*Harris v. Vector Marketing*,

    No. C-08-5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .............................. 8

*Hensley v. Eckerhart*,

    461 U.S. 424 (1983) ............................................................................ 7, 19

*Hollis v. Union Pac. R.R. Co.*,

    No. EDCV172449JGBSHKX,

    2018 WL 6267342 (C.D. Cal. Sept. 19, 2018)..............................................18

*In Cwik v. Harvest Management Sub LLC*,

    No. 2:12-cv-08309-DMG-JC ....................................................................23

*In re Activision Sec. Litig.*,

    723 F. Supp. 1373 (N.D. Cal. 1989).............................................................22

*In re Apollo Group Inc. Securities Litigation*,

    Nos. CV 04-2147-PHX-JAT, CV 04-2204-PHX-JAT,

    CV 04-2334-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012).................. 9

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) ....................................................................15

*In re Cenco Inc. Securities Litigation*,

    519 F.Supp. 322 (N.D. Ill. 1981)................................................................22

*In re IDB Communications Group, Inc. Sec. Litig.*,

    No. CV-94-3618-RG (JGX) (C.D. Cal. Jan. 17, 1997) ....................................21

*In re Immune Response Sec. Litig.*,

      497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................................................23

*In re Mego Fin. Corp. Sec. Litig.*,

      213 F.3d 454 (9th Cir. 2000) .......................................................................24

*In re Pac. Enters. Sec. Litig.*,

      47 F.3d 373 (9th Cir. 1995) ................................................................. 13, 18

*In re the PMI Group, Inc. Securities Litig.*,

      No. 08-1405 SI N.D. Cal. Dec. 16, 2010) ......................................................21

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,

      654 F.3d 935 (9th Cir. 2011) .......................................................................14

*Kerr v. Screen Extras Guild, Inc.*,

      526 F.2d 67 (9th Cir. 1975) ................................................................. 16, 19

*Knisley v. Network Assocs.*,

      312 F.3d 1123 (9th Cir. 2002)......................................................................17

*Lawrence Weinstein v. Mortgage Contracting Service, LLC*,

      No. EDCV1402521JGBSPX (C.D. Cal. Oct. 23, 2018)............................. 20, 25

*Linney v. Cellular Alaska P'ship*,

      151 F.3d 1234 (9th Cir. 1998)................................................................ 10, 12

*Litty v. Merrill Lynch & Co.*,

      No. CV 14-0425 PA (PJWX), 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015).......14

*In re Omnivision Techs., Inc.*,

      No. C-04-2297 SC, 2007 WL 4293467 (N.D. Cal. Dec. 6, 2007)......................17

*McGrath v. Cnty. of Nev.*,

      67 F.3d 248 (9th Cir. 1995) ........................................................................16

*Millan v. Cascade Water Servs.*,

      310 F.R.D. 593 (E.D. Cal. 2015)..................................................................12

*MRO Communs., Inc. v. AT&T Co.*,

      197 F.3d 1276 (9th Cir. 1999).......................................................................7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004).................................................................11

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,

    688 F.2d 615 (9th Cir. 1982) ....................................................................... 9

*Orozco v. Ardent Companies, Inc.*,

    No. 2:18-CV-02763-GW-SS (C.D. Cal. Feb. 3, 2020)....................................20

*Partl v. Volkswagen, AG*

    (*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, &*

    *Prods. Liab. Litig*), 895 F.3d 597 (9th Cir. 2018)............................................14

*Pelletz v. Weyerhaeuser Co.*,

    592 F. Supp. 2d 1322 (W.D. Wash. 2009) ....................................................24

*Powers v. Eichen*,

    229 F.3d 1249 (9th Cir. 2000)....................................................................16

*Reyes v. Pier Enters. Grp., Inc.*,

    No. EDCV152108JGBDTBX, 2018 WL 6427357 (C.D. Cal. Jan. 8, 2018).........18

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ....................................................................10

*Romero v. Producers Dairy Foods, Inc.*,

    2007 WL 3492841 (E.D. Cal. 2007) ...........................................................18

*Rutti v. Lojack Corp., Inc.*,

    No. SACV 06-350 DOC (JCx), 2012 WL 3151077 (C.D. Cal. July 31, 2012).....23

*Samantha Jones, et al. v. Abercrombie & Fitch Trading Company*,

    No. 2:15-cv-00105-JGB-E (C.D. Cal., Nov. 19, 2018) .............................. 22, 25

*Satchell v. Fed. Ex. Corp.*,

    No. C 03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)......................15

*Singer v. Becton Dickinson and Co.*,

    2010 WL 2196104 (S.D. Cal. 2010) ...........................................................18

//

*Smith v. Cty. of Riverside*,

    No. EDCV16227JGBKKX, 2019 WL 4187381 (C.D. Cal. June 17, 2019)..........21

*State of Fla. v. Dunne*,

    915 F.2d 542 (9th Cir. 1990).............................................................19

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) ...........................................................17

*Steiner v. Am. Broad. Co.*,

    248 Fed. Appx. 780 (9th Cir. 2007) .................................................21

*Teeter v. NCR Corp.*,

    No. 08-297 (C.D. Cal. Aug. 6, 2009) ...............................................21

*The Music Force, LLC v. Viacom, Inc.*,

    No. 04-8239 (C.D. Cal. Aug. 8, 2007)..............................................21

*Torrisi v. Tucson Elec. Power Co.*,

    8 F.3d 1370 (9th Cir. 1993) .............................................................10

*Van Vranken v. Atl. Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1995) ..................................................24

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010) .....................................................18

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002)...............................................16, 17, 19, 21, 23


**Statutes**

28 U.S.C. § 1715 .......................................................................... 7

Fed. R. Civ. P. 23........................................................................ passim

Fed. R. Civ. P. 54........................................................................ 7

Labor Code Section 2699 ............................................................25

Private Attorneys General Act of 2004.........................................2

**Other Authorities**

*Moore's Federal Practice* (Matthew Bender 3d ed.) ...................................................13

*Newberg on Class Actions* (4th ed. 2002). ..............................................................18

*Newberg on Class* Actions (4th ed. 2005) ................................................................ 7

*Newberg on Class Actions* (4th ed. 2012) ...............................................................11

*Newberg, Attorney Fee Awards* (1987) .................................................................21

## I.    INTRODUCTION

Named Plaintiff Robert North ("Plaintiff" or "North"), a former driver under contract with Defendant, Superior Hauling and Fast Transit, Inc., dba Redbird Carriers ("Redbird"), alleges Redbird and Defendants, Intermodal Drayage Services, Inc. ("IDS"), and Dack Ledbetter ("Ledbetter") (Redbird, IDS, and Ledbetter are referred to collectively as "Defendants"), were his lawful employers and that Defendants misclassified him and other drivers who contracted with Redbird as independent contractors, failed to provide legally compliant meal and rest breaks, failed to pay wages for all hours worked, waiting time penalties, reimbursement of expenses, and pay stubs. Plaintiff now seeks final approval of the Joint Stipulation of Settlement and Release of Class Action ("Stipulation"). Defined terms used herein have the same meaning as in the Stipulation, unless otherwise noted. The Stipulation includes a non-reversionary $3,250,000 Gross Settlement Amount ("GSA") to be paid to settle and release claims of Plaintiff and a Settlement Class of approximately 292 truck drivers.

The proposed Settlement Class is defined as "all current and former drivers for Redbird Carriers and/or IDS who were based out of and worked primarily in the State of California at any time during the Class Period." Because there are no Class Member opts-out from the Stipulation, the Stipulation is estimated to pay Class Participants an average of $7,525.68 (Net Settlement of $2,197,500 divided by approximately 292 Settlement Class Members), without any deductions for payroll. This Court has already found the Stipulation to be preliminarily fair, adequate, and reasonable, and preliminarily approved it on May 29, 2020. CM/ECF Docket No. ("Doc. No.") 83.

The proposed Stipulation was reached after considerable investigation. It is reflective of the strengths and vulnerabilities of North's claims, the probable outcome of further litigation relating to liability and damage issues, and the delay and risks that would be presented by further prosecution of the claims, including appeal of orders relating to class certification and/or the substantive merits of the case.

//

Before the Court is Plaintiff's Motion for Final Approval of Class Action Settlement, for Attorneys' Fees and Costs, and for the Service Fee. For reasons given below, this Court should grant the motion and finally approve the Stipulation.

## II.    PROCEDURAL HISTORY

On October 31, 2017, Plaintiff North filed a class action complaint against Redbird Carriers for (1) Failure to Pay Minimum Wages; (2) Failure to Reimburse Business Expenses; (3) Failure to Provide Accurate Paycheck Stubs; (4) Failure to Pay Wages Due at Termination; (5) Willful Misclassification as Independent Contractor; (6) Failure to Pay Rest Period Premiums; and (7) Unfair Competition. It was removed to federal court on March 24, 2017 (Doc. No. 1). On March 12, 2018, pursuant to a stipulated order, Plaintiff filed a First Amended Complaint adding Defendant IDS, agent for Redbird Carriers in California, as a co-employer Defendant, and adding an eighth claim for violation of the Private Attorneys General Act of 2004 ("PAGA"). On March 31, 2019, again pursuant to a stipulated order, Plaintiff filed a Second Amended Complaint adding a ninth claim for Failure to Pay Meal Period Premiums and to clarify that all class members were subject to the Federal Motor Carrier Safety Administration's Hours of Service Regulations. On September 9, 2019, Plaintiff filed a Third Amended Complaint asserting claims against Ledbetter as officer of Redbird. After litigation spanning several years, involving multiple mediations and intense motion practice, all of which is described in detail in Plaintiff's Motion for Preliminary Approval (Doc. No. 82), the parties reached a settlement, a copy of which is included as Exhibit A to the concurrently filed Declaration of Aris E. Karakalos ("Karakalos Decl.").

On April 11, 2018, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion,") along with declarations in support of the motion (Doc. Nos. 82-1, 82-5, 82-6). On May 29, 2020, the Court issued an order granting preliminary approval of the Stipulation (Doc. No. 83).

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   THE SETTLEMENT AGREEMENT

#### a.  Financial Terms

Defendants agree to pay a total settlement amount of $3,250,000. Stipulation § I(21). The cost of attorneys' fees, litigation expenses, Service Fee to class representative, claims administration costs incurred by the Settlement Administrator, CPT Group, Inc. ("CPT"), the employer's share of payroll taxes, and amount paid to the Labor Workforce and Development Agency ("LWDA") will all be subtracted from the GSA. Id. § I(2, 21, 25). Plaintiff requests that North receive a Service Fee of $10,000. Id. § I(2).

Although there is a contractual basis for an award of 40% in fees between Plaintiff and Class Counsel, the Stipulation provides that a maximum of 30% of the GSA (or $975,000) may go towards attorneys' fees. Id. § V(1). The Stipulation also provides that Class Counsel may seek a maximum of $25,000 for costs and litigation expenses. (Id.) Defendants agree not to oppose Class Counsel's motion for an award of attorneys' fees and costs, as stated in the Stipulation. (Id.) The parties further agreed that Plaintiffs could seek a maximum of $20,000 to settle the PAGA claim, with 75% to be paid to the LWDA and the remaining 25% to be distributed to the Class Members. Id. § I(28).  If a class member does not join in the settlement or opts out, the settlement payment he or she would have received will *not* revert to Defendants, as the Settlement is expressly non-reversionary Id. § IV(1).

The above Administrative Expenses add up to $1,052,500, leaving the NSA at $2,197,500, for an average net payout of $7,525.68 to the Class Members. A detailed breakdown of the payouts for each of the 292 Class Members is attached as <u>Exhibit 2</u> to the Declaration of Carole Thompson of CPT Group ("Thompson Decl."). Plaintiff's actual costs are less than $25,000 ($17,801.97) mentioned above and authorized by the Stipulation. This will result in a larger NSA shared by Class Members, thus increasing the expected average net settlement payout.

//

//

### b. Release

Defendants agree to pay the GSA in exchange for settling, disposing and resolving the Action and the dismissal of the Action with prejudice, the Plaintiff's and the Settlement Class Members' waiver and release of the Released Claims, and the other terms and conditions set forth in the Joint Stipulation. Stipulation § XI.

### c. Notice and Claims Process

The parties selected CPT Group, Inc. ("CPT") to be the settlement administrator. Id. § I(37). CPT has thus far provided members of the Settlement Class with notice pursuant to the terms of the Stipulation. CPT received the Court-approved text for the Notice Packet from Counsel on May 30, 2020. Thompson Decl., ¶ 5. CPT finalized a 4-page Notice Packet. Id., ¶ 6. CPT received written approval from all parties and printed enough of the Notice Packets to mail to all Class Members. Id., Exhibit 1. On June 8, 2020, CPT received a class data file from Redbird Carriers' Counsel that contained names, last known mailing addresses and telephone numbers, last known email addresses, and the starting and ending dates of contract and/or work for each Class Member during the Class Period. Id., ¶ 7. The finalized class list contained 292 Class Members. Id. On June 17, 2020, CPT conducted a NCOA search to update the addresses for all Class Members as accurately as possible. Id. ¶ 8. A search of this database provides updated addresses for any individual who moved in the previous four years and notified the U.S. Postal Service of a change of address. Id. As a result of the NCOA search, CPT was not able to locate any updated addresses. Id. The Notice Packets were enclosed in envelopes with the names and known addresses printed on them. Id., ¶ 9. On June 18, 2020, the Notice Packets were mailed via U.S. first class mail to all Class Members. Id. On August 7, 2020, reminder postcards were mailed to Class Members. Id.

Currently, 23 Notice Packets have been returned to CPT by the Post Office, of which 3 included a forwarding address. Id., ¶ 10. For those Notice Packets with a forwarding address, CPT immediately re-mailed those Notice Packets to the forwarding address upon receipt. Id. CPT performed a skip trace on all returned mail with no

forwarding addresses to locate a better address using Accurint, one of the most comprehensive address databases available. Id. Accurint utilizes hundreds of different databases supplied by credit reporting agencies, public records, and a variety of other national databases to identify a current address. Id. As a result of either skip trace, forwarding address provided from the Post Office, or request from counsel or the Class Member themselves, a total of 29 Notice Packets have been re-mailed to date. Id., ¶ 11. Currently, 8 Notice Packets remain undeliverable with no forwarding address and where no new address could be found through skip trace. Id.

Class Members had until September 16, 2020 to submit objections, disputes and/or requests for exclusion or Opt-Out Request. Id., ¶ 12. A "dispute" relates to a Class Member's written dispute challenging the number of weeks worked by that Class Member, as set forth in the Class Notice. Id. CPT has not received any written objections to the settlement from Class Members (Id., ¶ 13) and CPT has not received any written requests for exclusion or Opt-Out Requests. Id., ¶ 14. CPT received 3 disputes from Class Members regarding their number of credited workweeks. Id., ¶ 15. After the dispute and the documentation submitted by the Class Members were reviewed by Defendant, it was determined the Class Members should be credited for additional workweeks and the Class Members were informed of this decision by CPT. Id.

CPT reports that a total of 292 participating Class Members, representing a 100% participation rate. Id., ¶ 16. The total amount to be distributed to participating Class Members is calculated to be $2,197,500. Id. Each Class Participant will receive an Individual Settlement Amount based on a prorated assessment of the number of total workweeks for each Settlement Class Member during the Class Period. Id. The lowest payment to a participating Class Member is $28.32 – received by one individual. Id. The average payment to each participating Class Member is estimated at $7,525.68. Id. The highest payment to a participating Class Member is estimated at $35,966.76 – received by eight separate individuals. Id., Exhibit 2.

//

### d. Administration

Consistent with the Stipulation, Defendants shall pay all payments due to Class Members; attorneys' fees, costs, and expenses due to Class Counsel; the payment to the LWDA; the Class representative's Service Fee; and costs and expenses of CPT. Stipulation, § I(2).  CPT shall hold the funds in trust until all the conditions of the Stipulation are met. Id.  After the Effective Date, the Settlement Administrator shall mail, by first-class U.S. mail to the last-known address, the Individual Settlement Amounts payable by check to each Class Participant within 14 calendar days after Defendants' deposit of their respective payments on the dates set forth in Article VI, Section 2, and according to the schedule set forth in Article VIII, Section 6.  The Settlement Administrator shall also make payments called for in the Stipulation to the Class Representative, Class Counsel, and the LWDA. Id. § VIII (3), (4), (6). Funds payable to Settlement Class Members whose checks are not cashed within 120 days after mailing, will be issued to Bet Tzedek Legal Services, providing legal services to low-income person in Southern California.  Stipulation at ¶ VIII(7).

## IV.   LEGAL STANDARD

### a. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. *See id*. Nevertheless, the Court must examine the settlement for overall fairness. *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). Courts do not have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. See id. "The settlement must stand or fall in its entirety." *Id*. To approve the class action settlement herein, the Court must conduct a three-step inquiry. *See Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the notice requirements under the Class Action Fairness Act are met. *Id*. Next, it determines whether the notice requirements of

Federal Rule of Civil Procedure 23(c)(2)(B) have been met. *Id.* The Court must then find that the settlement is fair, reasonable, and adequate under Rule 23(e)(3). *Id.*

### b. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of … fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2) ] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award … [in order to] give[ ] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." *MRO Communs., Inc. v. AT&T Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. *See Alba Conte and Herbert B. Newberg, Newberg on Class* Actions § 14.1 (4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

## V.    DISCUSSION

### a. Class Action Fairness Act ("CAFA")

When settlement is reached in certain cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official....

28 U.S.C. § 1715(b).

The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

On May 1, 2020, with the aid of staff acting under my direction, Defendants served on all federal and state officials required to be notified of the settlement in this case the CAFA Notice, along with a flash drive containing electronic copies in .pdf format of the following as required by 28 U.S.C. § 1715: (1) Class Action Complaint; (2) First Amended Complaint; (3) Second Amended Complaint; (4) Third Amended Complaint; (5) Joint Stipulation of Settlement and Release of Class Action and the notices to class members (including the right to request exclusion); (6) A list of Class Members and their states of residence; and (7) Information pertaining to the Hearing on Preliminary Approval of Settlement.  True and correct copies of the CAFA notices are attached as <u>Exhibit A</u> to the Declaration of Emily A. Quillen ("Quillen Decl.").

Between the dates of May 4, 2020 and May 5, 2020, Ms. Quillen's staff received confirmations that each federal and state official served received the CAFA Notices. See Quillen Decl., <u>Exhibit B</u>.

### b.  Rule 23(a) and (b) Requirements

In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Doc. No. 83, p. 13 (Section VI(2)). Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." *Adoma*, 913 F. Supp. 2d at 974; *see also Harris v. Vector Marketing*, No. C-08-5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified... a Rule 23(b)(3) class ... [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); *In re Apollo Group Inc. Securities Litigation, Nos*. CV 04-

1  2147-PHX-JAT, CV 04-2204-PHX-JAT, CV 04-2334-PHX-JAT, 2012 WL 1378677 at

2  *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Class has not changed since it was

3  conditionally certified, except for increasing in size by a handful of Class Members (268

4  to 292, for an increase of 24 Class Members). All the criteria for class certification

5  remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### c. Rule 23(c)(2) Notice Requirements

7  Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice

8  that is practicable under the circumstances, including individual notice to all members

9  who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly,

10 Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is

11 directed in a reasonable manner to all class members who would be bound by the

12 agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court

13 approved the notice sent to Settlement Class Members. Doc. No. 83, p. 14 (Section

14 VI(6)). CPT mailed Notice in accordance with the procedures approved by the Court.

15 *See supra* § III(c). Thus, the Notice should be deemed adequate.

### d. Fair, Reasonable and Adequate

17 Under Rule 23(e), "the claims, issues, or defenses of a certified class may be

18 settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of

19 [Rule 23(e)] is the protection of those class members, including the named plaintiffs,

20 whose rights may not have been given due regard by the negotiating parties." *Officers*

21 *for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624

22 (9th Cir. 1982). The Court's inquiry is procedural in nature. *Id*. Pursuant to Rule

23 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only

24 after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P.

25 23(e)(2). The Court is scheduled to hold a final approval hearing on December 7, 2020.

26 In determining whether a settlement agreement is fair, adequate, and reasonable to

27 all concerned, the Court may consider some or all the following factors: (1) the strength

28 of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) any opposition by class members. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

This list of factors is not exhaustive, and a court may balance and weigh different factors depending on the circumstances of each case. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

### i. Strength of the Plaintiff's Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits there is no "particular formula by which that outcome must be tested." *Id.* at 965.

The strength and weaknesses of the claims at issue was discussed at length in the Plaintiff's Motion for Preliminary Approval (Doc. No. 82, Section IV(D)), and the same arguments are incorporated herein by reference. And, although Plaintiff remains confident in the strength of his claims, he recognizes the risks of continuing with further litigation. Namely, Defendants rely on the fact that, for the unpaid wages claim, Subdrivers are paid differently, depending on Subdrivers' arrangement with the various Contract Drivers. Based on this, Defendants argue that Plaintiffs could not show on a class-wide basis that the Contract Drivers and Subdrivers were paid less than minimum wage, because the foundational element, i.e., how and what the Contract Drivers and Subdrivers were paid, varied. Defendants also argue that the issue of whether Contract Drivers and Subdrivers were provided meal and rest periods was not susceptible of common proof. Defendants argue that the determination of whether Contract Drivers and Subdrivers were provided meal and rest periods would depend in part on Defendants' policies or lack thereof, as well as common evidence of whether the various Contract Drivers and Subdrivers were relieved of all duties, provided a reasonable

opportunity to take meal and rest breaks, and not impeded or discouraged from taking such breaks. Defendants also argue that by virtue of the fact that there are three varying versions of the independent contractor agreement (the one executed by Plaintiff was based out of the Ontario office, but there are Fontana and City of Industry as well), certification of the class would be impossible. Plaintiff and Defendants disagree on the extent and impact of the differences between these three agreements. Although Plaintiff is confident the common questions that would be framed for certification would avoid these problems, these variances could cast doubt on whether class treatment is appropriate and therefore had to be factored for purposes of exploring class-wide settlement. Karakalos Decl. ¶ 53.

### ii.    *Risk, Expense, Complexity, and Duration of Further Litigation*

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (*quoting 3 Newberg on Class Actions* § 11:50 (4th ed. 2012)). These factors were also discussed at length in the Plaintiff's Motion for Preliminary Approval (Doc. No. 82, Section IV(D)), and the same arguments are incorporated herein by reference. Without the Stipulation, the parties would be required to litigate the merits of the case — along, complex, and expensive prospect, with a likelihood of appeals and motion practice. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of final approval.

### iii.    *Risk of Maintaining Class Action Status Through Trial*

The risk of maintaining class action status was discussed in the Plaintiff's Motion for Preliminary Approval (Doc. No. 82, Section IV(D)), and the same arguments are incorporated herein by reference. Plaintiff settled just prior to filing his motion for class certification. If Plaintiff obtained certification, the Court would retain authority to de-certify the matter in the event the trial showed that common issues did not predominate.

It is likely that certification would have been maintained through trial, but given the testimony obtained from Ledbetter, each office in California treated their drivers differently enough to warrant possible decertification.  This factor favors final approval.

### iv.  Amount Offered in Settlement

Class Counsel estimate Defendant's maximum potential liability at $37,000,000. Doc. No. 82-3, <u>Exhibit B</u>. The Gross Settlement Amount, $3.25 million, represents 8.8% of the estimated maximum damages amount for an average payment of $7,525.68 to each Claimant. Thompson Decl., ¶ 16. Moreover, none of the payment shall revert to Defendant. Stipulation § I(25). It is understood that "[e]ven a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan v. Cascade Water Servs.*, 310 F.R.D. 593, 611 (E.D. Cal. 2015). A recovery of approximately 12–13% of the damages the Settlement Class could have recovered is consistent with amounts routinely found to be fair and  reasonable. *See, e.g., In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (approving settlement that was approximately thirteen percent of maximum recovery); *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving a settlement that was 10.7 percent of the total potential liability).  The amount offered is appropriate and warrants final approval.

### v.  Extent of Discovery Completed, and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. Here, the Stipulation was reached after considerable investigation including the depositions of Plaintiff and Ledbetter, written discovery, and document production of more than 10,000 pages, including <u>all</u> Independent Operating Agreements, time records, driver logs, settlement statements, insurance policies, and company policies.

Prior to the first mediation, Defendants shared the following information for a randomly chosen sample size of 30 drivers (15% of the estimated putative class), with

1   names and contact information redacted: (a) Independent Contractor Operating
2   Agreements; (b) Settlement Statements; (c) I.R.S. Form 1099's for 2013-2017; and (d)
3   the two most recent months of driver E-Logs. Defendants also shared Plaintiff North's
4   personnel file, his independent contractor agreement, his Settlement Statements, and the
5   most recent two months of his E-Logs. Karakalos Decl. ¶ 25. Prior to the second
6   mediation, Defendant Redbird Carriers shared documents and data for all putative class
7   members (both primary and Subdrivers). Karakalos Decl. ¶ 35. Defendant provided tens
8   of thousands of data entries in Excel bearing on the number of hours worked, number of
9   hours driven per day, number of hours on stand-by each day, total deductions from
10  settlement statements, total amounts paid per line haul, total fuel surcharges paid to
11  drivers, total number of individuals in each statutory period, etc. Karakalos Decl. ¶ 36
12  Using this comprehensive data, Plaintiff was able to calculate Defendants' alleged
13  exposure and created a one-page chart summarizing the exposure. Doc No. 82-3.

14      Thus, discovery was sufficiently advanced to allow the parties to make an
15  informed decision about settlement. *See DIRECTV, Inc.*, 221 F.R.D. at 527 ("A court is
16  more likely to approve a settlement if most of the discovery is completed because it
17  suggests that the parties arrived at a compromise based on a full understanding of the
18  legal and factual issues surrounding the case.") (*quoting 5 Moore's Federal Practice* §
19  23.85[2][e] (Matthew Bender 3d ed.). Accordingly, this factor favors settlement.

20          *vi. Experience and Views of Counsel*

21      In considering the adequacy of the terms of a settlement, the trial court is entitled
22  to, and should, rely upon the judgment of experienced counsel for the parties. *See*
23  *DIRECTV, Inc.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of
24  counsel, who are most closely acquainted with the facts of the underlying litigation[.]")
25  (internal quotation marks and citations omitted). This reliance is predicated on the fact
26  that "[p]arties represented by competent counsel are better positioned than courts to
27  produce a settlement that fairly reflects each party's expected outcome in the litigation."
28  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiffs' Counsel

1    has extensive experience serving as counsel in wage-and-hour class actions in federal

2    and state court. Karakalos Decl. ¶¶ 76-86; Declaration of Michael A. Strauss ("Strauss

3    Decl.") ¶¶ 13-23. Additionally, Plaintiffs' Counsel demonstrates a realistic and balanced

4    view of the potential outcome of the litigation based on the facts of the case and the

5    relative positions of the parties. As a result, the experience and views of Plaintiffs'

6    Counsel also weigh in favor of preliminary approval.

7           Another factor courts may consider is whether there was collusion: "To determine

8    whether there has been any collusion between the parties, courts must evaluate whether

9    fees and relief provisions clearly suggest the possibility that class interests gave way to

10   self interests, thereby raising the possibility that the settlement agreement is the result of

11   overt misconduct by the negotiators or improper incentives for certain class members at

12   the expense of others." *Litty v. Merrill Lynch & Co*., No. CV 14-0425 PA (PJWX), 2015

13   WL 4698475, at *10 (C.D. Cal. Apr. 27, 2015) (internal quotations omitted).

14          Here, the fees requested are well within the reasonable range of class action fees

15   awarded in such matters. See Section V(e)(i) *infra*. Moreover, they are even lower than

16   the fee agreement permits between Class Counsel and Representative Robert North,

17   calling for 40% if resolved at mediation. Moreover, to the extent the distribution of

18   settlement funds will span through July 2024, Class Counsel has agreed to a pro-rata

19   distribution of their fees over time as well, thereby guaranteeing that Class Counsel

20   assumes the same risks as the Class.

21          "[A] reversion clause can be a tipoff that 'class counsel have allowed pursuit of

22   their own self-interests and that of certain class members to infect the negotiations.' "

23   *Partl v. Volkswagen, AG* (*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, &*

24   *Prods. Liab. Litig*), 895 F.3d 597, 612 (9th Cir. 2018) (*quoting Jones v. GN Netcom, Inc.*

25   (*In re Bluetooth Headset Prods. Liab. Litig*.), 654 F.3d 935, 947 (9th Cir. 2011). Here,

26   the Settlement is intentionally non-reversionary.

27          Settlement negotiations were conducted at arm's-length – twice. On November

28   16, 2018, the Parties participated in a full-day mediation before Steve Pearl, a respected

14

1  third-party neutral in Los Angeles, at which the matter did not resolve. Karakalos Decl. ¶

2  26. Then again on January 7, 2020 the Parties participated in a full-day mediation before

3  Mark Rudy, a respected third-party neutral in San Francisco, experienced in the

4  settlement of wage and hour class action. Karakalos Decl. ¶ 34. The use of two

5  mediators experienced in the settlement process tends to establish that the settlement

6  process was not collusive. *See, e.g., Satchell v. Fed. Ex. Corp.*, No. C 03-2659 SI, 2007

7  WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).  Given the above, this factor weighs in

8  favor of approval.

9              ***vii.  Presence of Governmental Participant***

10             Since no governmental entity is present here, this factor favors approval.

11             ***viii.  Any Opposition by Class Members***

12             Overwhelming support for a Stipulation lends to a finding that the Stipulation is

13  fair, adequate, and reasonable. *DIRECTV, Inc.*, 221 F.R.D. at 529 ("It is established that

14  the absence of a large number of objections to a proposed class action settlement raises a

15  strong presumption that the terms of a proposed class settlement action are favorable to

16  the class members."). Here, CPT received no objections, zero opt-outs, and only three

17  disputes. Thompson Decl. ¶¶ 13-14. Three disputes represent a tiny percentage of the

18  Class of 292, and even then, they were resolved in favor of the disputing party. Id. ¶ 15.

19  Also, there is a 100% participation rate, which is no surprise given the average net

20  recovery. Id. ¶ 16. All the relevant factors favor approval. Thus, overall, the Stipulation

21  is "fair, reasonable and adequate to all concerned parties." *Ficalora v. Lockheed Cal.*

22  *Co.*, 751 F.2d 995, 996 (9th Cir. 1985).

23        **e.  Attorneys' Fees and Costs**

24             ***i.  Attorneys' Fees***

25             Class Counsel also requests approval of its fees. Courts are obliged to ensure that

26  the attorneys' fees awarded are reasonable, even if the parties have already agreed on an

27  amount. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

28  //

## 1. *Methods of Assessing Reasonableness of Fees*

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *McGrath v. Cnty. of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation. *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028-29 (9th Cir. 2000).

Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations. *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

## 2. *Swift Settlements Should be Rewarded, Not Penalized.*

Where an action is settled quickly, class counsel should not "necessarily receive a lesser fee for settling a case quickly." *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 and n. 5 (9th Cir. 2002). Indeed, as the Ninth Circuit has observed, "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *See id.* at 1050 n. 5.

Although not required to do so, a court may use the lodestar method to crosscheck the reasonableness of a percentage-of-the-fund fee award. *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008); *Vizcaino*, 290 F.3d at 1050. In this matter, a lodestar crosscheck may not be useful in analyzing the reasonableness of a 30% award given the massive benefits conferred on the class by cutting short the

1   litigation and settling when they did. Indeed, where an early settlement achieves an
2   excellent result for the class members by settling the instant action promptly, the Court
3   need not cross-check a percentage-based award against class counsel's lodestar, even
4   where the lodestar may be far below the percentage-based award. *Glass v. UBS Fin.*
5   *Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15-16 (N.D. Cal. Jan. 26,
6   2007) aff'd, 331 F. App'x 452 (9th Cir. 2009) ("Glass"). In *Glass*, a class action seeking
7   overtime wages owed to stockbrokers, class counsel requested fees solely under the
8   percentage of the fund method (25% of a $45,000,000 reversionary settlement) and did
9   not provide the court with information relative to its lodestar, because the case resolved
10  early on. *Id.* at *15. The court noted that, despite the lack of information to calculate
11  class counsel's lodestar, "there can be no doubt that the lodestar would result in a fee
12  substantially lower than the $11,250,000 claimed." *Id.* Nevertheless, the court found that
13  the percentage sought was reasonable, primarily because class counsel achieved an
14  excellent result for the class. In sum, this Court is not bound to consider the lodestar, but
15  where it does, it should not penalize counsel for obtaining a great settlement efficiently.

### 3. *Percentage-of-Fund*

17      Although the percentage of fees sought by counsel exceed the 25% benchmark,
18  they are justified, and are otherwise in harmony with California precedent on the issue.
19  Ample case law supports an amount well above the 25% benchmark. *See, e.g., Vizcaino*,
20  290 F.3d at 1047. After all, the benchmark is not a requirement, and courts frequently
21  award fees greater than this amount. *See, e.g., ln re Omnivision Techs., Inc.*, No. C-04-
22  2297 SC, 2007 WL 4293467, at *10 (N.D. Cal. Dec. 6, 2007) ("[I]n most common fund
23  cases, the award exceeds that [25%] benchmark"). If a negotiated class action settlement
24  includes an award of attorney's fees, that fee award must be evaluated in the overall
25  context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir.
26  2002). A district court must therefore "carefully assess the reasonableness of a fee
27  amount spelled out in a class action settlement agreement." *Staton v. Boeing*, 327 F.3d
28  939, 963 (9th Cir. 2003).

California district courts usually award attorneys' fees in the range of 30-40% in wage and hour class actions that result in the recovery of a common fund under $10 million. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing five recent wage and hour cases where federal judges approved fee awards ranging from 30% to 33% and approving percentage of the fund award of 33% to class counsel); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *8 (S.D. Cal. 2010); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *1-4 (E.D. Cal. 2007).

In general, smaller cases tend to have fees *above* the 25% benchmark in California, and oftentimes well above the level requested herein by Class Counsel. *Craft*, 624 F.Supp.2d at 1127 (holding that attorneys' fees for mega fund cases are typically under the 25% benchmark and cases below $10 million are often more than the 25% benchmark); *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, at *15 (E.D. Cal. Nov. 27, 2012) ("[I]n most common fund cases, the award exceeds the benchmark percentage."); *see also, In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of $12 million common fund). Other case law surveys suggest that 30-50% is commonly being awarded in cases in which the common fund is relatively small. *See Newberg on Class Actions*, § 14:6 (4th ed. 2002).

Here the average gross recovery is $11,386.97. This Court has awarded more than the benchmark percentage, even in cases where the average recovery was well below what it is here. *Reyes v. Pier Enters. Grp., Inc.*, No. EDCV152108JGBDTBX, 2018 WL 6427357, at *9 (C.D. Cal. Jan. 8, 2018) (awarding 33% in a case with an average gross recovery was $6,183); *Hollis v. Union Pac. R.R. Co.*, No. EDCV172449JGBSHKX, 2018 WL 6267342, at *10 (C.D. Cal. Sept. 19, 2018) (awarding 33.3% in a case with an average gross recovery of only $186.22). Here, the average gross recovery is $11,130.14 significantly higher than in *Reyes* and *Hollis*. Even the net recovery of $7,525.68 is higher than the gross recoveries in *Reyes* and *Hollis*.

//

1

### 4.  *Lodestar and Multiplier*

2        The trial court may, but is not required to, compare the lodestar and the 25%
3    benchmark to determine if the 25% benchmark results in an inappropriately high or low
4    fee.  *See Vizcaino*, 290 F.3d at 1050-51; *Fischel v. Equitable Life Assurance Society of*
5    *the United States*, 307 F.3d 1001, 1007 (9th Cir. 2002) (finding no error where district
6    court awarded fees under lodestar method and did not compare lodestar with 25%
7    benchmark); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal.
8    2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a
9    useful reference point.").  Regardless, even if a lodestar approach is used, the fees sought
10   are more than reasonable.

11       The lodestar is calculated using "the number of hours reasonably expended on the
12   litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424,
13   433 (1983).  The court may then apply a multiplier to the lodestar to arrive at a
14   reasonable fee. *Blum*, 465 U.S. at 888. The appropriate multiplier is determined in light
15   of certain factors, including: (1) the time and labor required; (2) the novelty and
16   difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the
17   preclusion of other employment due to acceptance of the case; (5) the customary fee; (6)
18   whether the fee is fixed or contingent; (7) the time limitations imposed by the client or
19   the circumstances; (8) the amount at controversy and the results obtained; (9) the
20   experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case;
21   (11) the nature of the professional relationship with the client; and (12) awards in similar
22   cases.  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also*
23   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (a lodestar figure "may
24   be adjusted upward or downward to account for several factors including the quality of
25   the representation, the benefit obtained for the class, the complexity and novelty of the
26   issues presented, and the risk of nonpayment") (citing Kerr). The Ninth Circuit requires
27   "only that fee awards in common fund cases be reasonable under the circumstances."
28   *State of Fla. v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990).

a. <u>Hours Expended and Hourly Rates are Reasonable.</u>

The number of hours and the hourly rates sought are certainly reasonable – in fact, they are modest compared to the results achieved. Class Counsel (both Mr. Karakalos and Mr. Strauss) seek an hourly rate of $675. Strauss Decl., at ¶ 24; Karakalos Decl. at ¶ 87. Class Counsel spent a total of 515.30 hours litigating this case. Strauss Decl., at ¶ 44; Karakalos Decl. at ¶ 96. A detailed record of Counsels' billings are submitted for this Court's review. Strauss Decl., <u>Exhibit D</u>. Multiplying these hours by Counsel's hourly rates yields a lodestar of $345,735. *Id.*

This Court has found that similar hourly rates were acceptable for other attorneys with similar resumes. *See Lawrence Weinstein v. Mortgage Contracting Service, LLC*, No. EDCV1402521JGBSPX, Docket No. 94 at *13 (C.D. Cal. Oct. 23, 2018) (awarding $625 rate for an attorney admitted in 2005, the same years as attorney Karakalos was admitted herein). Moreover, in February 2020, the Honorable George Wu of this Court expressly found Class Counsel's rates of $650 to be reasonable. *Orozco v. Ardent Companies, Inc.*, Case No. 2:18-CV-02763-GW-SS (C.D. Cal. Feb. 3, 2020), Docket No. 77 at *10. And, as explained in the Declaration of Class Counsel Aris Karakalos, although he is not a "partner," Strauss & Strauss is not structured to provide partnership opportunities, as evidenced by the fact that over the past decade the firm has employed only 4-6 attorneys (currently 4), including its principal and owner, Michael Strauss.

Plaintiff's counsel, Aris Karakalos, has submitted declarations from two attorneys – Daniel Palay and Paul Huff – who regularly practice in the Central District. Both attest to the reasonableness of the $675 hourly rate for Mr. Karakalos. See Karakalos Decl., <u>Exhibit B</u>. Plaintiff's counsel, Michael Strauss, has submitted declarations from four attorneys – Scott R. Ames, Alireza Alivandivafa, Jeffrey Rager, and Leonard A. Sansanowicz – who regularly practice in the Central District. Each of them attest to the reasonableness of the $675 hourly rate for Mr. Strauss. See Strauss Decl., <u>Exhibit A</u>.

Finally, the rates requested by Class Counsel are reasonable and consistent with those charged by attorneys with similar qualifications, skill and reputation in the Los

1    Angeles legal community where this case is pending.  Counsel has submitted evidence

2    that supports this contention in the form of declarations from attorneys in the community

3    with similar, if not greater experience, and a printout of the *Laffey* Matrix showing

4    hourly rates in excess of those sought by Class Counsel herein. Strauss Decl., at ¶¶ 29-

5    30; Karakalos Decl. at ¶¶ 91-92. When analyzing the *Laffey* Matrix for an attorney

6    practicing for as long Mr. Karakalos and Mr. Strauss have, it suggests that their hourly

7    rate is approximately $759 (without any multiplier for the Los Angeles market). This is

8    significantly above the $675 rate they are both currently seeking. A copy of the *Laffey*

9    Matrix is attached as <u>Exhibit C</u> to both the Karakalos Decl. and Strauss Decl.

10       This Court has recognized the relevance of the *Laffey* Matrix in weighing the

11   reasonableness of rates. *See Smith v. Cty. of Riverside*, No. EDCV16227JGBKKX, 2019

12   WL 4187381, at *3 (C.D. Cal. June 17, 2019).

13                           b.  <u>The Multiplier Sought is Reasonable.</u>

14       To reach the requested fees amount of $975,000 requires a reasonable multiplier

15   of only ***2.82.***  This multiplier is well within the range of multipliers routinely approved

16   in this Circuit in comparable common fund settlements. *See Vizcaino*, 290 F.3d at 1051

17   (approving multiplier of 3.65 and citing recent cases approving multipliers as high as

18   9.6).  *See also Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007)

19   (affirming award with multiplier of 6.85); *see also Newberg, Attorney Fee Awards*, §

20   14.03 at 14-5 (1987) ("multiples ranging from one to four are frequently awarded in

21   common fund cases when the lodestar method is applied."); *In re the PMI Group, Inc.*

22   *Securities Litig.*, No. 08-1405 SI (N.D. Cal. Dec. 16, 2010) (approving 25% fee,

23   resulting in 4.76 multiplier); *Teeter v. NCR Corp.*, No. 08-297 (C.D. Cal. Aug. 6, 2009)

24   (approving 25% fee, resulting in 4.61 multiplier); *Doty v. Costco Wholesale Corp.*, No.

25   05-3241 (C.D. Cal. May 14, 2007) (approving 25% fee, resulting in 9.07 multiplier); *The*

26   *Music Force, LLC v. Viacom, Inc.*, No. 04-8239 (C.D. Cal. Aug. 8, 2007) (approving

27   25% fee, resulting in 6.43 multiplier); *In re IDB Communications Group, Inc. Sec. Litig.*,

28   No. CV-94-3618-RG (JGX) (C.D. Cal. Jan. 17, 1997) (approving multiplier of 6.2).

In line with plethora of decisions in this Circuit approving multipliers at or above 4.5, this honorable court has awarded higher multipliers in wage and hour class action settlements. *In Cwik v. Harvest Management Sub LLC,* Case No. 2:12-cv-08309-DMG-JC, this Court awarded 25% of the common for a total fee amount of $1.875 million fees resulting in a multiplier of 4.54. Class Counsel are even more deserving here – the average net recovery in this case is over 4.54 times the net recovery approved in *Cwik* ($1,658 versus $7,525.68). This Court has awarded multipliers far more than what Class Counsel seeks. *See Samantha Jones, et al. v. Abercrombie & Fitch Trading Company*, No. 2:15-cv-00105-JGB-E, Docket No. 83 at *13 (C.D. Cal., Nov. 19, 2018) (awarding a 3.7 multiplier, and citing to expressly recognizing 3.65 multiplier awarded in *Vizcaino* as reasonable and appropriate).

c. <u>*Kerr* and *Hanlon* Factors Support the Fee Request.</u>

Further, consideration of the *Kerr* and *Hanlon* factors demonstrates that the requested multiplier is warranted in this case. The time and labor required, the requisite skill of the attorneys, the novelty and difficulty of the questions involved, the results obtained, the experience and reputation of the attorneys, and awards in similar cases have all been addressed above.

Regarding the novelty and difficulty of the questions involved, as set forth above, at the time Class Counsel initiated this case, given multiple adverse recent rulings on the applicability of California law to the OCS, the outcome of this case was highly in doubt. This doubt was proved warranted by the decision on Parker Drilling, and subsequent rulings by District Courts. Class counsel should be granted a higher multiplier for taking such risk. *See, e.g., Steiner*, 248 Fed. Appx. at 782, fn. 2 (approving 6.85 multiplier in part because of risk assumed by Class Counsel where "Defendants had alleged defenses that might have made class certification impossible"); *see also In re Cenco Inc. Securities Litigation*, 519 F.Supp. 322, 327 (N.D. Ill. 1981) ("The uncertainty as to the likelihood of success at trial made it unlikely that a settlement would be reached. Thus, the contingency factor here was high and for this reason, dictates that plaintiffs' counsel

1  deserves significantly greater compensation than they would have absent the high-risk

2  factors."). The same circumstances justify the requested multiplier here.

3      Regarding the undesirability of the case, Plaintiff initiated this action when the

4  uncertainty of the outcome was high, especially considering the fluctuating legal

5  precedents relating to FMCSA preemption and the legal challenges to *Dynamex*. This

6  fact underscores the appropriateness of a reasonable multiplier enhancement of 2.82.

7      Finally, Class Counsel have maintained a close and productive relationship with

8  North over the last three years, and he is very satisfied with the result of Class Counsel's

9  work on this case. Given the complexity of the issues herein, the risks great involved at

10 each stage of litigation, the outstanding result, and the prescient push for resolution prior

11 to the granting of certiorari, and by comparison to similar cases if a lodestar crosscheck

12 is employed, the multiplier requested is appropriate. *See Vizcaino*, 290 F.3d at 1051.

13 Thus, this Court should find that the reasonableness of the fee award requested by Class

14 Counsel is supported by a lodestar crosscheck.

15                    *ii. Costs*

16     "In a certified class action, the court may award reasonable attorney's fees and

17 nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ.

18 Proc. 23(h); *see Trans Container Servs. v. Sec. Forwarders, Inc.*, 752 F.2d 483, 488 (9th

19 Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying,

20 long-distance telephone calls, computer legal research, postage, courier service,

21 mediation, exhibits, documents scanning, and visual equipment are typically

22 recoverable." *Rutti v. Lojack Corp., Inc.*, No. SACV 06-350 DOC (JCx), 2012 WL

23 3151077, at *12 (C.D. Cal. July 31, 2012). Class Counsel seeks $17,801.97 in costs.

24 Karakalos Decl., ¶ 100; Strauss Decl., ¶ 48. Class Counsel provides an itemized

25 breakdown of the expenses in this case, which include filing fees, service of process,

26 postage, parking, photocopies, travel, and mediation costs (Strauss Decl., <u>Exhibit E</u>)

27 with accompanying receipts and invoices for each expense. *Id.* All these expenses are

28 typically recoverable in litigation. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d

1  1166, 1177-78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a

2  class action settlement). Hence, the requested costs of $17,801.97 should be approved,

3  especially considering that it is less than the $25,000 authorized in the Stipulation.

4       **f. Service Fee**

5       Plaintiff seeks a Service Fee of $10,000 for his services to the class. The trial

6  court has discretion to award such fees to the class representatives. *See In re Mego Fin.*

7  *Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). The criteria courts have used in

8  considering the propriety and amount of a service fee include: (1) the risk to the class

9  representative in commencing a class action, both financial and otherwise; (2) the

10 notoriety and personal difficulties encountered by the class representative; (3) the

11 amount of time and effort invested by the class representative; (4) the duration of the

12 litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class

13 representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F.

14 Supp. 294, 299 (N.D. Cal. 1995).

15      Plaintiff has put his ability to secure future employment at risk. By lending his

16 names to this matter, Plaintiff has subjected himself to possible adverse consequences in

17 seeking future employment as potential employers may become aware of their

18 participation in this action and, as a result, decline to hire Plaintiff.  Plaintiff participated

19 in the case by meeting with class counsel in person and by phone, assisting with the

20 preparation of legal papers, responding to requests for information, producing

21 information and documents, driving to and from Victorville to Ventura, California for a

22 full-day preparation for deposition, making the same four hour roundtrip again for his

23 deposition in Ventura, attending two full day mediations telephonically, reviewing draft

24 settlement documents and proposing edits to said documents.  See concurrently filed

25 Declaration of Robert North ("North Decl.") ¶¶ 21-23. Plaintiff expended more than 67

26 hours on the case. North Decl. ¶ 21.  Further, Plaintiff has agreed to a general release of

27 claims against Defendant which is much broader than the release by other Settlement

28 Class Members. North Decl. ¶ 25. Based on the above, the Service Fee is appropriate.

This Court has previously awarded the same $10,000 award (or even $15,000) in cases where the average gross recovery was a mere fraction of what it is here. *Galicia Gonzalez v. BMC W., LLC*, No. 517CV00390JGBRAOX, 2018 WL 6318826, at *2 (C.D. Cal. Nov. 20, 2018) (average gross recovery of only $486.22); *Lawrence Weinstein v. Mortgage Contracting Service, LLC*, No. EDCV1402521JGBSPX, Docket No. 94 at *15 (C.D. Cal. Oct. 23, 2018) (average gross recovery of only $2,222.22); *Samantha Jones, et al. v. Abercrombie & Fitch Trading Company*, No. 2:15-cv-00105-JGB-E, Docket No. 83 at*14 (C.D. Cal., Nov. 19, 2018) (average gross recovery of only $156).

The same factors that supported the Service Fees in the above-mentioned cases apply equally to Robert North herein.  Mr. North was (1) committed to prosecuting the action for over 3 years; (2) he has assumed financial risk for paying costs if the case was lost; (3) he risked stigma upon future employment opportunities; (4) he invested much time and effort into investigating and participating in mediation and settlement (twice actually); (5) he traveled from Victorville to Ventura for in-person preparation for his deposition; (6) he travelled from Victorville to Ventura for his full-day deposition; (7) assisted in the preparation of pleadings and discovery responses; (8) attended a plethora of telephone calls and conferences with counsel to assist in litigation tactics and efforts; and (9) has agreed to a general release. North Decl., ¶¶ 19-25.

In the views of Class Counsel, Robert North is one of the most hard-working class representatives they have encountered in their years of class action litigation. Karakalos Decl., ¶¶ 102-106. Thus, the requested Service Fee of $10,000 should be approved.

## VI.    PAGA NOTICE COMPLIANCE

On June 18, 2020, a copy of the Stipulation was submitted to the LWDA by Plaintiff's counsel, as required under Labor Code Section 2699(l)(2).  Karakalos Decl., <u>Exhibit D</u>.  On October 20, 2020, a copy of the Order Granting Preliminary Approval of the Stipulation (Doc. No. 83) was submitted to the LWDA by Plaintiff's counsel, as required under Labor Code Section 2699(l)(3). Karakalos Decl., <u>Exhibit E</u>.

## VII.  CONCLUSION

For the reasons stated above, Plaintiff asks that the Court grant final approval of the Settlement, grant Class Counsel's request for attorneys' fees and costs, grant the Service Fee requested by Plaintiff Robert North and dismiss the operative complaint with prejudice while retaining jurisdiction to enforce the terms of the Settlement through completion in 2024.

Dated: November 9, 2020          **STRAUSS & STRAUSS, APC**


By:   /s/_____
        Aris E. Karakalos
        Attorneys for the Class