UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 18-2564 JGB (KKx)** | Date | December 7, 2020 |
| Title | *Robert North v. Superior Hauling and Fast Transit, Inc.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Aris Edmund Karakalos | Jocelyn A. Villanueva<br>Emily Quillen |

**Proceedings:**   Order (1) GRANTING IN PART Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 84)

Before the Court is Robert North's ("Plaintiff") unopposed motion for final approval of class action settlement. ("Motion," Dkt. No. 84.) The Court held a telephonic final approval hearing on December 7, 2020. After considering the papers filed in support of the matter, as well as oral argument, the Court GRANTS the Motion.

## I.   BACKGROUND

In October 2017, Plaintiff commenced this action in California Superior Court for the County of San Bernardino. (Dkt. Nos. 1-2.) The Complaint is a class action suit on behalf of current and former employees of Superior Hauling and Fast Transit, Inc. ("Redbird") who were allegedly misclassified as independent contractors and whose rights were violated under California labor law. Id. Redbird removed the case to federal court in December 2018. (Dkt. No. 1.) The third amended complaint is the operative pleading. ("TAC," Dkt. No. 72.) The TAC asserts nine causes of action against Redbird, Intermodal Drayage Services, Inc. ("IDS"), and Dack Lee Ledbetter ("Ledbetter") (collectively "Defendants"): (1) failure to pay wages; (2) failure to reimburse job-related expenses, in violation of California Labor Code § 2802; (3) failure to provide accurate itemized wage statements, in violation of California Labor Code § 226; (4) failure to pay wages due at termination, in violation of California Labor Code § 203; (5) willful misclassification as independent contractors; (6) failure to provide rest periods; (7) failure to provide meal periods; (8) unfair competition and violation of California's Unfair Competition

Law ("UCL"), Cal. Business & Professions Code § 17200 et seq.; and (9) violation of California's Private Attorneys General Act ("PAGA").  (TAC.)

Plaintiff filed an unopposed motion for preliminary approval of class action settlement on April 27, 2020.  ("MPA," Dkt. No. 84.)  The Court granted the MPA on May 29, 2020.  ("MPA Order," Dkt. No. 83.)  In the MPA Order, the Court certified a Settlement Class; appointed Aris E. Karakalos and Michael A. Strauss of Strauss & Strauss, APC as Class Counsel; appointed Robert North as class representative; appointed CPT Group, Inc. as the settlement administrator; approved the requisite Class Notice forms; and authorized the mailing of Class Notice forms.  (Id. at 13-14.)  The Court set the final fairness hearing for Monday, December 7, 2020 at 9:00 a.m.  (Id.)

Plaintiff filed the unopposed Motion on November 9, 2020, and included in support the following documents:

- Declaration of Aris E. Karakalos ("Karakalos Declaration," Dkt. No. 84-1 (attaching Exhibits A to E, Dkt. Nos. 84-2 to 84-6));
- Declaration of Michael A. Strauss ("Strauss Declaration," Dkt. No. 84-7 (attaching Exhibits A to E, Dkt. Nos. 84-8 to 84-12));
- Declaration of Robert North ("North Declaration," Dkt. No. 84-13);
- Declaration of Emily A. Quillen ("Quillen Declaration," Dkt. No. 84-14 (attaching Exhibits A to B, Dkt. Nos. 84-15 to 84-16));
- Declaration of Carole Thompson ("Thompson Declaration," Dkt. No. 84-17 (attaching Exhibits 1 to 2, Dkt. Nos. 84-18 to 84-19)).

## II. THE SETTLEMENT AGREEMENT

The parties finalized and executed the class action settlement agreement on April 24, 2020.  ("Agreement," Dkt. No. 84-2.)  The Agreement involves a settlement class ("Class") comprised of "all current and former drivers for Redbird Carriers and/or IDS who were based out of and worked primarily in the State of California at any time during the Class Period."  (Agreement ¶ I(5).)

### A. Settlement Summary

Below is an overview of the financial terms of the Agreement:

- Gross Settlement Amount:                                $3,250,000
- Attorneys' fees, not to exceed 30% of gross settlement:      $975,000

- Costs and expenses: $25,000[1]
- Service award to class representative: $10,000
- PAGA payment $15,000
- Payment to settlement administrator, estimated not to exceed: $27,500
- Net Settlement Amount: $2,197,500

The $3,250,000 gross settlement amount is non-reversionary, so no amount will be returned to Defendant. (Mot. at 3; Agreement ¶ IV(1).) If a check remains uncashed 120 days after the final distribution, the settlement administrator will direct funds from the uncashed check to a cy pres beneficiary, Bet Tzedek Legal Services. (Mot. at 6; Agreement ¶ VIII(7).)

**B. Financial Terms**

    **1. Class Members and Allocation of Funds**

After all deductions have been made from the Gross Settlement Amount for Administrative Expenses, and PAGA to the LWDA, it is estimated that $2,197,500 will be available as the Net Settlement Amount for disbursement to Class Participants, resulting in an average payment of $7,525.68 per class member. (Mot. at 3; Thompson Decl. Ex. 2.) The Net Settlement Amount will be allocated to the estimated 292 Settlement Class Members and four distinct Subclasses including:

    a. 2802 Subclass with an estimated 230 members;
    b. PAGA Subclass with an estimated 262 members;
    c. Paystub Subclass with an estimated 262 members;
    d. Waiting-Time Subclass with an estimated 165 members.

(Agreement ¶ VIII(2); Karakalos Decl. ¶ 62.) The Net Settlement Amount shall be allocated and distributed to Class Members who do not timely and properly request exclusion ("Class Participants"), as follows:

    a. Approximately $1,123,230, or 51.1% of the Net Settlement Amount shall be allocated and distributed to each Class Participant based on the number of weeks each Settlement Class Member worked during the Class Period, compared to the total number of weeks worked by the Settlement Class Members during the Class Period.
    b. Approximately $1,074,270, or 48.9% of the Net Settlement Amount shall be allocated and distributed among Class Participants who are part of the

---

[1] While the Settlement authorizes Class Counsel to seek a maximum of $25,000 for costs and expenses, their actual costs are $17,801.97. (Mot. at 3.) Reducing the costs and expenses to that amount, the net settlement amount is $2,204,698.03. The Motion, however, uses the $2,197,500 figure in all relevant calculations.

Subclasses, which relate to certain causes of action (see to paragraphs (a) to (d) above).

Plaintiff estimates an allocation of: (a) $877,128.90 to 2802 Subclass prorated by workweeks (40% of NSA) with an average payout of $3,813.60; (b) $5,000 to the PAGA Subclass prorated by workweeks (25% of the total PAGA Allocation) with an average payout of $19.08; (c) $109,641.10 to Paystub Subclass prorated by workweeks (5% of the NSA) with an average payout of $418.48; and (d) $82,500 to Waiting-Time Subclass ($500 per member) with a flat payout of $500.00.  (Karakalos Decl. ¶ 62; Thompson Decl. Ex. 2.)  Payments will be reported on IRS form 1099 as nonwage income.  (Agreement ¶ IV(4).)

### 2.  Payment and Distribution of Funds

The Gross Settlement Fund shall be funded by Defendants in installments, with the first installment being paid on either fifteen days after the Effective Date (as defined in Article I, Section 19 of the Settlement) or December 31, 2020, whichever is earlier.  (Agreement ¶ VIII(6).)  The Settlement Administrator shall then mail, by first-class U.S. mail to the last-known address, the Individual Settlement Amounts within fourteen calendar days after Defendants' deposit of their respective payments and according to the schedule set forth in the Agreement.  (Agreement ¶ VIII(5).)

Any checks issued to Settlement Class Members shall remain valid for 120 days from the date of issuance.  The Parties agree that the Settlement Administrator will issue a check in the amount of any uncashed checks to Bet Tzedek Legal Services, providing free legal services to low-income individuals.  (Agreement ¶ VIII(7).)

Given the differing financial positions of the corporate Defendants, payments have been spread over four years, through July 15, 2024.  Payments are larger at the outset and decrease in later years.  (Karakalos Decl. ¶ 65.)  Having reviewed financials of Redbird and IDS, Plaintiff's Counsel states that the schedule as drafted is in the best interest of the Class.  (Agreement ¶ VIII(6); Karakalos Decl. ¶ 66.)  Redbird and IDS have agreed to split payment, with Redbird paying $1,625,000 and IDS paying $1,625,000, albeit on different timelines.  (Karakalos Decl. ¶ 67.)  The full amounts allocated to the Waiting-Time Subclass and PAGA Subclass, the Service Fee, and Counsel's Costs will be paid in the first payment, with remaining payments based on equitable percentages.  Percentage allocations will be made for the 2802 Subclass, Paystub Subclass, Class Counsel Fees, and Settlement Administrator Costs, with the remainder distributed to the Class Participants.  (Karakalos Decl. ¶ 68.)

### 3.  PAGA Payment

The Agreement allots $20,000 to PAGA penalties ("PAGA Allocation").  Seventy-five percent (75%) or $15,000 of the PAGA Allocation shall be paid to the California Labor and Workforce Development Agency ("LWDA"), and twenty-five percent (25%) or $5,000 of the

PAGA Allocation will become part of the Net Settlement Amount distributed to Class Participants.  (Agreement ¶¶ I(28), VIII(2).)

### 4. Class Representative

Plaintiff shall receive $10,000 in consideration for a general release of all his claims against Defendants.  (Agreement ¶ IV(2).)  The payment shall be made from the Gross Settlement Amount.

### 5. Settlement Administration Costs

The Court appointed CPT Group, Inc. ("CPT") as the Settlement Administrator.  (MPA Order at 15.)  The Settlement allots an amount not to exceed $27,500 of the Gross Settlement Amount to administer this Settlement.  (Agreement ¶ VI(1).)  CPT mailed notice packets to the class, sent reminder postcards, and has kept track of opt-out requests and objections to the Settlement.  (See Thompson Decl. ¶ 9.)

### 6. Attorneys' Fees and Costs

Plaintiff's Counsel request an award of attorneys' fees in an amount of $975,000 (30% of the Gross Settlement Amount).  (Agreement ¶ V(1); Mot. at 15-23.)  This includes work remaining in documenting the settlement, securing Court approval, ensuring the settlement is fairly administered, and obtaining dismissal of the action.  Also, Plaintiff's Counsel request a reimbursement from the Gross Settlement Amount for actual litigation costs in an amount of $17,801.97 (Mot. at 23), which is less than the $25,000 authorized in the Settlement (Agreement ¶ V(1)).

## C. Injunctive Relief

The Agreement does not appear to include any injunctive relief.

## D. Release

In exchange for Defendants' promise to make the payments provided for in the Stipulation, Class Participants settle, compromise, and discharge the Released Claims, including all federal, state, and local statutory claims and common law claims related to hours worked and unpaid wages.  (Agreement ¶ XI(1).)  Only North has agreed to a general release of all claims.  (Agreement ¶ XI(2).)

## E. Notice

On June 8, 2020, Redbird provided CPT with a class data file containing the names, last-known mailing addresses and telephone numbers, last-known e-mail addresses, and the starting and ending dates of contract and/or work for each Settlement Class Member during the Class

Period.  (Mot. at 4; Thompson Decl. ¶ 7.)  The finalized class list contained 292 Class Members.  (Thompson Decl. ¶ 7.)  On June 17, 2020, CPT conducted an NCOA search for all Class Members to update their addresses.  (Id. ¶ 8.)  CPT did not locate any updated addresses.  (Id.)  On June 18, 2020, CPT mailed Notice Packets via U.S. first class mail to all Class Members.  (Id. ¶ 9.)  CPT mailed reminder postcards to all Class Members on August 7, 2020.  (Id.)

Twenty-three Notice Packets were returned to CPT, 3 of which included a forwarding address.  (Id. ¶ 10.)  CPT re-sent the Notice Packets with forwarding addresses.  (Id.)  For those returned Notice Packets without a forwarding address, CPT conducted a skip trace to locate a better address.  (Id.)  Despite these efforts, 8 Notice Packets remain undeliverable with no forwarding address or new address found through skip trace.  (Id.)

Class Members had until September 16, 2020 to submit objections, disputes, and/or requests for exclusion or Opt-Out Request.  (Id. ¶ 12.)  CPT has not received any written objections or requests for exclusion or Opt-Out Requests.  (Id. ¶¶ 13-14.)  CPT received three disputes from Class Members regarding their number of credited workweeks, and credited Class Members for additional workweeks where appropriate.  (Id. ¶ 15.)

## III. LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy favors settlement of class actions.  Id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness.  Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  Hanlon, 150 F.3d at 1026.  "The settlement must stand or fall in its entirety."  Id.

In order to approve a class action settlement, the court must conduct a three-step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act.  Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Finally, the court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2).  Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure.  While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees.  "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award."  MRO Commc'ns, Inc. v. AT&T Co., 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees.  See Newberg on Class Actions § 14.1 (4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting provisions and the equitable common-fund doctrine").  Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h).  Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'"  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## IV. DISCUSSION

### A. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).

The statute provides detailed requirements for the contents of such a notice.  Id.  A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

Defendants' Counsel filed a declaration asserting they served all required documents to all appropriate federal and state officials on May 1, 2020. (Quillen Decl. ¶ 3, Exs. A-B.) As a result, the Court finds that the CAFA notice requirements have been satisfied.

### B. Rule 23(a) and (b) Requirements

In its MPA Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). (MPA Order at 3-5.) The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); see also Harris v. Vector Marketing, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Class has not changed since it was conditionally certified, other than a slight increase in the number of class members (from 268 to 292 class members). (Mot. at 9.) All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### C. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its MPA Order, the Court approved the notice sent to Settlement Class Members. (MPA Order at 14.) CPT completed notice in accordance with the procedures approved by the Court. (See Thompson Decl.) The Court therefore finds that notice to the Settlement Class was adequate.

### D. Fair, Reasonable, and Adequate

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing by telephone on December 7, 2020.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

>(1) the strength of the plaintiff's case;
>(2) the risk, expense, complexity, and likely duration of further litigation;
>(3) the risk of maintaining class action status throughout the trial;
>(4) the amount offered in settlement;
>(5) the extent of discovery completed, and the stage of the proceedings;
>(6) the experience and views of counsel;
>(7) the presence of a governmental participant; and
>(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exhaustive, and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964-65 (9th Cir. 2009). In determining the probability of Plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965. In the Settlement, MPA and Motion, Plaintiff emphasized the hurdles the class would need to overcome to prevail on the merits of their case. (MPA at 11; Mot. at 10-11.) As a result, the Court finds this factor weighs in favor of granting final approval.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

The risk, expense, and complexity, including the risk of decertification, weigh in favor of final approval. (MPA Order at 11; Mot. at 11.) Without the Settlement, the parties would be required to litigate the merits of the case—a process which the Court acknowledges is long, complex, and expensive. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of approval.

### 3. Amount Offered in Settlement

The gross settlement amount is $3,250,000, with an average recovery of $7,525.68 per class member. (Mot. at 12; Thompson Decl. ¶ 16.) Counsel estimates that that the maximum potential liability for core claims is $37,000,000. (Mot. at 12.) The gross settlement therefore amounts to approximately 8.8% of the estimated maximum potential recovery. (Id.) In discounting his exposure analysis, Plaintiff had to consider the realistic potential of (1) proving

Defendants were his lawful employer; (2) achieving and maintaining class certification on all claims; and (3) recovering under each of his theories. (MPA at 24.)

"Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." Millan v. Cascade Water Servs., 310 F.R.D. 593, 611 (E.D. Cal. 2015). Here, the recovery amount is consistent with amounts routinely found to be fair and reasonable. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (permitting settlement amount that was one-sixth of potential recovery); Deaver v. Compass Bank, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving a settlement that was 10.7% of the total potential liability). In light of the difficulties Plaintiff would likely face if he continued to litigate this case, the Court finds the amount offered here to be reasonable.

### 4. Extent of Discovery Completed, and the Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239. "The parties must … have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (internal quotation marks omitted). Here, Class Counsel represent that they engaged in considerable investigation prior to the Settlement, including the depositions of Plaintiff and Defendant Ledbetter, written discovery, and document production of more than 10,000 pages (including all Independent Operating Agreements, time records, driver logs, settlement statements, insurance policies, and company policies). (Mot. at 12.) The parties attended two mediations. Prior to the first mediation, Defendants shared detailed information for a sample size of 30 drivers (15% of the estimated putative class). (Mot. at 13; Karakalos Decl. ¶ 25.) That mediation was unsuccessful. Prior to the second mediation, Defendant Redbird Carriers shared documents and data for all putative class members. (Mot. at 13; Karakalos Decl. ¶ 35.) Defendant provided comprehensive data (including the number of hours worked, number of hours driven by day, total deductions from settlement statements, total amounts paid per line haul, total fuel surcharges paid to drivers, total number of individuals in each statutory period, etc.), which Plaintiff utilized to calculate the alleged exposure. (Karakalos Decl. ¶ 36.)

Because Plaintiff participated in mediation and conducted significant investigation, the Court finds each side has a clear idea of the strengths and weaknesses of its respective cases, and concludes that the extent of discovery and the stage of proceedings weigh in favor of final approval.

### 5. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and

citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995). Here, Class Counsel have extensive experience serving as counsel in wage and hour class actions. (Mot. at 14; Karakalos Decl. ¶¶ 76-86; Strauss Decl. ¶¶ 13-23.) The parties reached settlement after review of their claims and defenses, with the assistance of two mediators, as the first mediation was unsuccessful. (Mot. at 21.) Counsel recommends the settlement as "fair, reasonable, [and] in the best interest of the members of the class." (Karakalos Decl. ¶ 85.) As a result, the experience and views of Class Counsel also weigh in favor of final approval.

### 6. Presence of a Government Participant

No governmental entity is present in this litigation. Therefore, this factor favors approval.

### 7. Opposition by Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, CPT has received no objections or opt-out requests. (Thompson Decl. ¶¶ 13-14.) CPT received only 3 disputes from Class Members regarding their number of credited workweeks, all of which were resolved. (Id. ¶ 15.) CPT mailed notice to all 284 individuals on the class list, 8 of which had addresses ultimately deemed undeliverable despite advanced address research efforts. (Id. ¶¶ 7-11.) Thus, a total of 276 Class Members, or 97.3% of the Class, were mailed Notice which was not returned as undeliverable. (Id. ¶ 11.) The deadline to opt out or object to approval of the Settlement was September 16, 2020, but no Class Members requested exclusion. (Id. ¶¶ 12-14.) The Court finds that this factor weighs in favor of approval.

On balance, the factors support final approval of the Settlement. The Settlement is fair, adequate, and reasonable.

## E. Attorneys' Fees and Costs

### 1. Attorneys' Fees

Class Counsel request approval of $975,000 in attorneys' fees, which is equal to 30% of the Gross Settlement Amount. (Mot. at 21.) Courts are obligated to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). In

the MPA Order, the Court noted that Counsel's request for 30% of the gross settlement is "on the high side of fair, but is potentially reasonable[,]" and asked Plaintiff to provide justifying documentation and examples of similar awards. (MPA Order at 13.)

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the "presumptively reasonable" lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028-29 (9th Cir. 2000). Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations. Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

The Court begins with the lodestar method as a means of cross-checking the one-third of the gross settlement amount requested. Class Counsel calculate the following subtotals:

| Attorney | Hours | Hourly Rate | Lodestar |
| --- | --- | --- | --- |
| Michael A. Strauss | 24.10 | $675.00 | $16,267.50 |
| Aris E. Karakalos | 491.20 | $675.00 | $329,735.00 |
| Total | 515.30 | | $345,735.00 |

(Karakalos Decl. ¶ 96.) Plaintiff argues that the hourly rate of $675 is within the range of rates approved by courts for complex class actions. (Mot. at 20 (listing cases); Strauss Decl. ¶ 24; Karakalos Decl. ¶ 87.) Here, Class Counsel request $975,000 in fees, which amounts to 30% of the gross settlement amount, and requires a 2.82 multiplier of their lodestar.

Plaintiff argues that this Court has found similar hourly rates acceptable for attorneys with similar resumes. However, the cases Plaintiff identifies do not support the requested hourly rate. See, e.g., Weinstein v. Mortgage Contracting Service, LLC, No. 14-2521-JGB-SPx, Dkt. No. 94 (C.D. Cal. Feb. 3, 2020) (awarding $625 rate for attorney with similar years of experience). For instance, in Orozco v. Ardent Companies, Inc., No. 18-2763-GW-SS (C.D. Cal. Feb. 3, 2020), a court recently found a rate of $650 to be reasonable for both Karakalos and Strauss. There, the court noted that "the hourly fees requested are not entirely unreasonable, although $650 an hour for an associate [(Karakalos)] is quite high." Orozco, Dkt. No. 77, at 10. However, the court approved that rate after considering Karakalos' experience and his lead role in prosecuting the action. Id. The Court agrees with Orozco's analysis. Here, however, Counsel requests a higher rate, without identifying any other cases approving that rate or explaining what would warrant an increase over what Orozco noted was an already high hourly rate. The Court

therefore adjusts Counsel's hourly rates to $650. Applying that rate to both Strauss and Karakalos, the lodestar is adjusted to $334,945.00.

After adjusting the hourly rates of Strauss and Karakalos, the requested $975,000 in fees would represent a 2.91 multiplier. Plaintiff argues that this multiplier is well within the range of reasonableness, especially considering the efficiency with which the result was achieved, the various risks involved, and the average net recovery of over $7,525.68. (Mot. at 20; Karakalos Decl. ¶ 99.) Given those factors, the Court agrees that a multiplier is appropriate. However, considering that the 25% benchmark fee represents a 2.35 multiplier, the Court finds that this percentage is appropriate here. Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Paul, Johnson, Alston & Hunt v. Graulty, 866 F.3d 258, 272 (9th Cir. 1989) (noting that the 25% benchmark can be adjusted in either direction "to account for any unusual circumstances[,]" but the justification for adjustment must be apparent).

Plaintiff argues that this Court has awarded more than the benchmark percentage in cases where the average recovery was well below what it is here. But in the cases Plaintiff cites, the requested fees represented far more limited lodestar multipliers. See, e.g., Reyes v. Pier Enters. Grp., Inc., 2018 WL 6427357, at *9 (C.D. Cal. Jan. 8, 2018) (lodestar multiplier was 0.54, meaning that Counsel sought half of the fees actually incurred); Hollis v. Union Pac. R.R. Co., 2018 WL 6267342, at *10 (C.D. Cal. Sept. 19, 2018) (lodestar multiplier was 1.32). To support their request for a 2.82 multiplier, Class Counsel also point to Samantha Jones, et al. v. Abercrombie & Fitch Trading Company, where this Court awarded a 3.7 multiplier. No. 2:15-cv-00105-JGB-Ex, Dkt. No. 83 at *13 (C.D. Cal. Nov. 19, 2018). But in Jones, counsel requested an award of 25% of the common fund, which required a 3.7 multiplier. The Court concluded that a 25% award was presumptively reasonable, and found the applicable multiplier to be acceptable. Id. Here, the Court similarly finds that an award of 25% of the common fund is presumptively reasonable, and that a 2.32 multiplier is appropriate. The Court therefore AWARDS Class Counsel an award of 25% of the common fund, or $812,500.

### 2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class Counsel seek $17,801.97 in costs, which is less than the $25,000 maximum allocation in the Agreement. (Mot. at 30; Agreement § V(1).) Counsel provide a breakdown of the expenses incurred in the case for filing fees, service of process, postage, parking, photocopies, travel, and mediation costs. (Strauss Decl., Ex. E.) These expenses are typically recoverable in

litigation.  Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement).  The Court therefore approves the requested amount of costs.

### 3. Incentive Award

Plaintiff requests a service award of $10,000 for named Plaintiff North.  The court has discretion to award incentives to class representatives.  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz v. Weyerhaeuser Co., 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009).  The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.  Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, named Plaintiff has agreed to a wide general release (Agreement ¶ XI(2)), unlike other class members who only release the settled claims alleged in the complaint.  North also assumed significant risk in bringing this litigation, including the risk of limiting his ability to secure future employment in a tight-knit industry. (North Decl. ¶ 19.)  North assisted in the prosecution of the case by reviewing the pleadings, reviewing discovery responses, reviewing the damages model, tracking down potential witnesses and putative class members, gathering and sharing evidence, being available throughout settlement negotiations, and reviewing settlement documents, among other contributions.  (Id. at ¶ 20.)  North estimates he spent close to 67 working on the case.  (North Decl. ¶ 21.)  Based on the above, the Court finds that the requested incentive award is appropriate.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiff's Motion. The Court:

1. GRANTS final settlement approval;
2. GRANTS IN PART the request for attorneys' fees and AWARDS Class Counsel attorneys' fees in the amount of $812,500 from the gross settlement amount;
3. GRANTS the request for costs and AWARDS Class Counsel costs in the amount of $17,801.97;
4. GRANTS the request for payment to the settlement administrator and awards CPT Group, Inc. fees in the amount of $27,500 from the gross settlement amount;
5. GRANTS the request for an incentive award and AWARDS $10,000 to North;
6. DISMISSES the Complaint WITH PREJUDICE.

**IT IS SO ORDERED.**